STATE of Missouri, Respondent,

v.

Richard STILES, Appellant.

No. WD 37032.

Missouri Court of Appeals,
Western District.

March 25, 1986.

Thomas J. Cox, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before NUGENT, P.J., and SHANGLER and MANFORD, JJ.

NUGENT, Presiding Judge.

The defendant, Richard Stiles, appeals his conviction of assault in the second degree. He challenges the sufficiency of the evidence asserting that the state did not prove venue and complains of errors in certain comments made by the prosecutor

during closing argument and in the trial court's refusal to quash the jury panel after the prosecutor used his peremptory challenges to strike all black persons on the venire. We affirm.

The state's evidence at trial revealed the following facts. In the early morning hours of August 9, 1983, Michael Pierce and his friend, Rita Barr, were sitting at a bus stop near the intersection of 12th and Woodland Avenue. The defendant approached them and then shot Pierce in the head with a .38 caliber pistol. Michael Pierce fell to the ground and the defendant remarked that "he liked head shots" and that he was going to smoke one of Pierce's cigarettes and "finish off the job." The victim then got up, ran down Woodland Ave. and into an apartment, wrapped a towel around his head wound, and remained there until the police arrived.

Officer Terrance Finn of the Kansas City, Missouri, police department was dispatched to the scene at 12th and Woodland on a report of a shooting. He spoke with Ms. Barr, and shortly thereafter he saw Michael Pierce bleeding from the head with a cloth held over his wound. He called an ambulance and transmitted a description of the suspect over his radio. Officer Hardie Smith also from the Kansas City, Missouri, police department photographed the scene.

Officer Sherman Staffer of the Kansas City, Missouri, police department was in his patrol car at 1:45 that morning on Prospect Ave. when he heard of the shooting nearby and a description of the suspect. He then saw the defendant, who fit the description, walking south on the 1300 block of Prospect with a pistol butt sticking out of his back pocket. He shouted that the defendant was under arrest, and the defendant pulled the gun out and dropped it over the guardrail of the I–70 overpass on Prospect. The officer looked down from the overpass and saw the pistol in the median strip between the east and westbound lanes of I–70. He then placed the defendant under

arrest and notified other officers to recover the gun.

By amended information, the defendant was charged with two counts of assault in the first degree committed in Jackson County, Missouri.[1] Before trial, the parties stipulated that the bullet removed from Michael Pierce's skull had been fired from the .38 caliber revolver that was recovered from the I–70 median strip under the Prospect overpass at the time of defendant's arrest. The defendant was tried on January 21, 1985, in the Jackson County Circuit Court. The venire included only four black individuals. The prosecutor used four of his six peremptory challenges to strike those individuals.

The state called four witnesses, including the three police officers and the victim. Michael Pierce testified that he lived at 6418 Paseo; he was, of course, the state's key witness despite the fact that, at the time of trial, he himself was charged with second degree murder.[2] Upon cross-examination, Mr. Pierce denied participating in a crap game or fighting with the defendant just before he was shot. Upon redirect examination, the prosecution emphasized the fact that he had made no deals with Mr. Pierce for leniency on the murder charge. Upon recross, defense counsel asked Pierce if he had ever been interviewed by the police. He stated that some officers had spoken to him while he was in the hospital. Then defense counsel asked, "At any time after you got out of the hospital, were you ever interviewed by anybody other than an attorney taking your deposition?" Pierce replied that he was not.

At the close of the state's case, the defendant moved for a judgment of acquittal asserting that the state's evidence was insufficient because it failed to prove venue. The court overruled the motion.

Richard Stiles' defense was that he shot Mr. Pierce in self-defense after the two of them had gotten into a scuffle. The de-

---

1. Count II alleged that the defendant shot at Rita Barr, but it was dismissed upon the prosecutor's motion at the close of the evidence.

2. That murder charge is unrelated to the case at bar.

fendant did not testify, but he called Aux-vasse Brown, his girlfriend, as his only witness.

Ms. Brown lived at 1119 Woodland, only a block and a half from the site of the shooting. She testified that on the night in question, the defendant left her apartment without a gun and headed toward 12th and Woodland. Shortly after he left, she heard a scuffle and saw two persons "jump" the defendant. The defendant yelled, "Leave me alone," and then she heard a shot. The defendant ran down Woodland and his assailant down 12th Street.

Upon cross-examination Ms. Brown admitted that she had a son by the defendant. She also admitted that she had not spoken to police officers or the defense attorney about what she saw until the day before trial. The defense rested at the conclusion of Ms. Brown's testimony. At the close of all the evidence, the defendant renewed his motion for judgment of acquittal asserting that the state's case lacked evidence of venue.

In the first portion of his summation, the prosecutor argued that, although Michael Pierce was not a model citizen, he was nevertheless entitled to the protection of our laws. He emphasized that Mr. Pierce had nothing to gain by his testimony and that, if the defendant were convicted, they would probably end up in the same prison. He also noted that, although the defendant was arrested over a year and a half ago, Ms. Brown had not contacted anyone with her information until the day before trial.

In his closing argument, defense counsel noted that Mr. Pierce was the only witness who testified that the defendant shot him. He reminded the jury that the state did not call Rita Barr or other persons involved to testify. He emphasized that in order to find the defendant guilty, the jury must find that Michael Pierce was a "truth teller." He then reminded the jury that Mr. Pierce had never spoken to the police before trial and thus was no more credible than Ms. Brown.

The prosecution responded in closing argument by noting that Ms. Barr and the others mentioned by defense counsel were equally available to the defense to call as witnesses. He stated that none of those people wanted to testify. He again emphasized that no deal had been made with the victim and then said:

> He [defense counsel] says this guy [Michael Pierce] never gave this story before. He gave a 36-page deposition, May 3rd, 1984, and [defense counsel] is a good lawyer, and another lawyer took this, so you've got two lawyers with 16 years' experience, 32 years of education, and he did not use this [the deposition] one time.

At some point while making that argument, the prosecutor picked up Pierce's deposition and waved it in the air.

Defense counsel objected to the reference to the deposition. At the bench out of the hearing of the jury, defense counsel argued that the prosecutor improperly referred to the deposition which was not in evidence. The prosecutor responded that defense counsel himself had mentioned the deposition while cross-examining Mr. Pierce. Defense counsel insisted that the prosecutor was improperly waving a document around that had not been introduced into evidence. Finally, the court sustained counsel's objection and the prosecution concluded his closing argument without mentioning the deposition. The jury found the defendant, Richard Stiles guilty of assault in the second degree.

Defendant Stiles raises three points on appeal. He challenges the sufficiency of the evidence and claims error in the prosecutor's closing argument and in his use of peremptory challenges.

## I.

■ The defendant asserts that the trial court erred in denying his motions for judgment of acquittal because the prosecutor presented no evidence of venue to the jury. The defendant first recognizes that although venue must be shown in every criminal case, it is not an integral part of the offense and, thus, need not be proven beyond a reasonable doubt. He further as-

serts, however, that here the prosecutor made no mention of the location at which the crime ... had been committed other than the vague statement of '12th and Woodland'." He urges that "no evidence was produced nor were any statements made regarding what city or county '12th and Woodland' was located in." The defendant has overlooked several portions of the testimony which circumstantially prove venue.

■ Absent a waiver, venue must be proved because the accused is guarantied the right to a public trial in the county in which the offense was committed. Constitution of Missouri, Art. I, § 18(a); § 541.-033.[3] However, venue is not an integral part of the criminal offense and need not be proved by direct evidence but may be inferred from all the facts and circumstances in the case. *State v. Poelker*, 378 S.W.2d 491, 495 (Mo.1964) (en banc); *State v. Vincent*, 582 S.W.2d 723, 724 (Mo.App. 1979); *Nelson v. State*, 537 S.W.2d 689, 693 (Mo.App.1976). Venue may be established if the jury could reasonably find from the facts and circumstances in evidence that the crime occurred within the trial court's jurisdiction. *Poelker* at 494; *State v. King*, 662 S.W.2d 304, 308 (Mo.App.1983); *Nelson* at 693. Here the record provides ample evidence from which the jury could have found that this assault was committed in Jackson County, Missouri.

■ In determining the sufficiency of evidence of venue, appellate courts may take judicial notice of the official highway map of the State of Missouri. *See Vincent* at 725. In this case all of the officers who investigated the incident were Kansas City, Missouri, police officers. All of the state's witnesses and the defendant's witness testified that the shooting occurred at 12th and Woodland Ave. The official highway map shows that the intersection of 12th Street and Woodland Ave. is within the city limits of Kansas City, Missouri, and is well within the county limits of Jackson County, Missouri.

Officer Staffer testified that he first saw the defendant in the 1300 block of Prospect Ave. and that, when apprehended, the defendant dropped the gun over the guardrail of the I–70 overpass on Prospect. The official map reveals that Interstate 70 does run through Jackson County and that Prospect Ave. does have an overpass across the highway. In fact, that bridge is only a few blocks from the intersection of 12th and Woodland.

The evidence is more than sufficient to establish that the shooting occurred in Jackson County, Missouri. Thus, the trial court correctly denied defendant's motions for judgment of acquittal.

## II.

■ The defendant also asserts that the trial court erred in failing to declare a mistrial, sua sponte, when the prosecutor, during closing argument, referred to and picked up a deposition which had not been introduced into evidence. Unfortunately, the defendant has not shown how he was harmed by the prosecutor's brief reference to the deposition. Moreover, any prejudice he had suffered was not of the magnitude to require the court to declare a mistrial, and the defendant's failure to request a mistrial of the trial judge forecloses his obtaining one here.

Even if the prosecutor's reference to the deposition was erroneous, we fail to see how the defendant was prejudiced by his actions. The jury had no way of knowing what information was contained in the deposition, although they already knew of its existence through defense counsel's cross-examination of the victim. The defendant argues that he was prejudiced because defense counsel picked up the deposition and waved it in the air, after which a lengthy discussion took place at the bench "which emphasized the importance of its contents." But, the jury had no way of determining its contents and, therefore, could not have given them any weight.

3. Missouri Revised Statutes, 1978.

Moreover, even if the reference did prejudice the defendant in some way, it was not of the magnitude that requires a mistrial. A declaration of mistrial is an extraordinary remedy that should be used only when the trial court believes that prejudice to the defendant can be removed in no other way. The trial judge, in the first instance, is the appropriate person to determine whether a mistrial is necessary because he observed the incident which spurred the request and is in a much better position than an appellate court to determine any prejudicial effect the error had upon the jury. *State v. Davis,* 653 S.W.2d 167, 176 (Mo.1983) (en banc).

Here, during the prosecutor's reference to the deposition, defense counsel requested permission to approach the bench. At the bench, he objected to the prosecutor's use of a document not in evidence. The trial court promptly sustained the objection. A discussion ensued and the prosecutor explained that he referred to the deposition in good faith in response to defense counsel's argument that the victim did not speak to police before trial. He believed that defense counsel's reference to the deposition during cross-examination of the victim was sufficient to permit him to refer to it.

The trial court again sustained the objection, and defense counsel requested no additional relief. In light of the fact that he did not demonstrate how the prosecutor's actions prejudiced him, the defendant cannot now complain that the trial court did no more. *State v. Johnson,* 663 S.W.2d 265–66 (Mo.App.1983). The defendant did not ask the trial judge to determine whether a mistrial was necessary. Thus, the trial court did not err in failing to grant a mistrial, sua sponte.

### III.

Finally, defendant asserts that the trial court erred in refusing to quash the jury panel when the prosecutor used his peremptory challenges to strike all four black members of the venire. He urges that such action by the prosecutor constitutes "the use of peremptory challenges to systematically exclude black jurors" and violates his "right to an impartial jury as guaranteed by Article I, Sections 18(a) and 22(a) of the Missouri Constitution, and the Sixth Amendment of the United States Constitution as applicable to Missouri through the Fourteenth Amendment." Since the defendant did not allege or offer statistical evidence to prove that the prosecutor has consistently striken all black persons from previous venire panels, we must rule this point against him.

#### a. *The United States Constitution*

The defendant's claim that the prosecutor's actions violated his Sixth Amendment rights to an impartial jury must fail. In *State v. White,* 622 S.W.2d 939, 948 (Mo. 1981) (en banc), the Missouri Supreme Court held that "[t]he selection of potential jurors [the venire panel] is a separate matter from their subsequent elimination at trial by peremptory challenge. The Sixth Amendment protection covering the former does not encompass the latter." Accordingly, we are bound to hold that the prosecutor's actions here could not have denied defendant his Sixth Amendment right to an impartial jury.[4]

#### b. *The Missouri Constitution*

The defendant also claims that he was denied his Missouri constitutional rights to an impartial jury under Article I, sections 18(a) and 22(a). Specifically, he quotes the

---

4. Although the defendant did not argue it, we also find that his claim would fail under the Equal Protection Clause of the Fourteenth Amendment. The Missouri Supreme Court has held that to rebut the presumption that a prosecutor has acted properly in exercising his peremptory challenges the defendant must allege and prove that "the exclusion of blacks is made in case after case, whatever the circumstances,

whatever the crime and whoever the defendant or victim may be ... with the result that no Negroes ever serve on petit juries...." *State v. Baker,* 524 S.W.2d 122, 125 (Mo.1975) (en banc), quoting from *Swain v. Alabama,* 380 U.S. 202, 223, 85 S.Ct. 824, 837, 13 L.Ed.2d 759 (1965). Here, the defendant did not allege that the prosecutor had consistently stricken all black persons from previous venire panels.

clause from 22(a) which provides that "the right of trial by jury as heretofore enjoyed shall remain inviolate." That clause merely specifies however, when a civil or criminal litigant is entitled to a jury trial. Section 18(a) more specifically addresses the accused's right to an impartial jury in a criminal prosecution, but that section is not helpful to the defendant here.

This case is similar to *Clark v. State*, 465 S.W.2d 557 (Mo.1971). In that case the defense counsel testified that the prosecutor peremptorily struck all black jurors on the venire prior to trial. He asserted that such action violated the defendant's constitutional rights to a fair and impartial jury guarantied by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, sections 10 and 18(a) of the Missouri Constitution. The court there applied the *Swain* test and held that the defendant's constitutional claims failed because he presented no evidence to show that the Jackson County prosecutor had excluded all black persons from jury service by use of the peremptory challenge in case after case. As noted earlier in footnote 4, the defendant here presented no such evidence. All his constitutional challenges are without merit.

For the foregoing reasons, we affirm the judgment.

All concur.